[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14164
Non-Argument Calendar
_____

D.C. Docket No. 1:08-md-01928-DMM

IN RE: TRASYLOL PRODUCTS LIABILITY LITIGATION - MDL – 1928
_____
9:10-cv-81378-DMM


LINDA NELSON,
as Authorized Representative of Emma Fisher,

Plaintiff-Appellant,

versus

BAYER CORPORATION,
BAYER HEALTHCARE PHARMACEUTICALS, INC.,
BAYER SCHERING PHARMA AG,

Defendants-Appellees,

BAYER HEALTHCARE AG,

Defendant.


_____
9:10-cv-81399-DMM


PAMELA WEAVER,

as Authorized Representative of the Estate of Betty Glenn,

                                        Plaintiff-Appellant,

versus

BAYER CORPORATION,
BAYER HEALTHCARE PHARMACEUTICALS, INC.,
BAYER SCHERING PHARMA AG,

                                        Defendants-Appellees,

BAYER HEALTHCARE AG,

                                        Defendant.

_____
9:10-81349-DMM


STEPHANIE MEIBURGER,
as Authorized Representative of Matthew Meiburger,

                                        Plaintiff-Appellant,

versus

BAYER CORPORATION,
BAYER HEALTHCARE PHARMACEUTICALS, INC.,
BAYER SCHERING PHARMA AG,

                                        Defendants-Appellees,

BAYER HEALTHCARE AG,

                                        Defendant.

_____
9:10-cv-81347-DMM

2

CLYDE MIKKOLA,
as Authorized Representative of the Estate of Marian Mikkola,

Plaintiff-Appellant,

versus

BAYER CORPORATION,
BAYER HEALTHCARE PHARMACEUTICALS, INC.,
BAYER SCHERING PHARMA AG,

Defendants-Appellees,

BAYER HEALTHCARE AG,

Defendant.

_____

9:10-cv-81409-DMM

JANICE DUNHAM,
as Authorized Representative of Bernie Sartor,

Plaintiff-Appellant,

versus

BAYER CORPORATION,
BAYER HEALTHCARE PHARMACEUTICALS, INC.,
BAYER SCHERING PHARMA AG,

Defendants-Appellees,

BAYER HEALTHCARE AG,

Defendant.

3

_____

9:10-cv-81409-DMM

OSCAR WALTON,

Plaintiff-Appellant,

versus

BAYER CORPORATION,
BAYER HEALTHCARE PHARMACEUTICALS, INC.,
BAYER SCHERING PHARMA AG,

Defendants-Appellees,

BAYER HEALTHCARE AG,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 14, 2013)

Before CARNES, BARKETT and HULL, Circuit Judges.

PER CURIAM:

This appeal arises from a multi-district litigation ("MDL") initiated by multiple plaintiffs against defendants Bayer Corporation and related entities (collectively "Bayer"). The plaintiffs sought damages for injuries allegedly caused by Bayer's Trasylol drug. In this appeal, six of the plaintiffs ("Plaintiffs")

4

challenge the district court's dismissal of their actions without prejudice for failure to properly serve process on Bayer under Federal Rule of Civil Procedure 4. After review, we affirm.

## I.  BACKGROUND

### A.    Federal Rule of Civil Procedure 4

Because this appeal involves Rule 4, we discuss it briefly in the beginning. Under Rule 4, "[t]he plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m)." Fed. R. Civ. P. 4(c)(1). Rule 4(m) provides 120 days for service as follows:

> **Time Limit for Service.** If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.

Fed. R. Civ. P 4(m). Rule 4(m) also provides that if the plaintiff shows "good cause" for the failure to serve within that 120 days, the court "must extend the time for service for an appropriate period." Id. "Good cause exists only when some outside factor, such as reliance on faulty advice, rather than inadvertence or negligence, prevented service." Lepone-Dempsey v. Carroll Cnty. Comm'rs, 476 F.3d 1277, 1281 (11th Cir. 2007) (internal quotation marks and alteration omitted).

With this background, we outline how Plaintiffs in the present case failed to serve Bayer for nearly 16 months, resulting in dismissal of their complaints.

5

**B.      Pretrial Proceedings Before Plaintiffs Joined the MDL**

The instant Trasylol MDL began on April 7, 2008, when Trasylol actions from multiple district courts across the United States were transferred to the District Court for the Southern District of Florida for coordinated or consolidated pretrial proceedings, pursuant to 28 U.S.C. § 1407.

In May 2008, before the six Plaintiffs here joined the MDL, the district court issued Pretrial Order No. 4 ("PTO 4"), outlining various procedures to be followed by the parties during the course of the pretrial litigation. Among other things, PTO 4 stated that defendant Bayer had agreed to a simplified service of process procedure, in that the plaintiffs could serve Bayer by sending summons and complaints through registered mail, return receipt requested, to one of the two listed addresses. This reduced the expense of serving process and avoided complications of effecting service in Germany (the home of Bayer's German division).

PTO 4 further required both the plaintiffs and the defendant Bayer to produce certain discovery. Specifically, PTO 4 provided that, within 90 days of the order, or within 60 days of the commencement of the action, whichever is later, a plaintiff must serve Bayer with, among other things, (1) a "Fact Sheet" (the form of which was being negotiated by the parties); (2) authorizations for the release of records for each health care provider identified in the Fact Sheet; and (3) copies of

6

"all documents subject to the requests for production contained in the Fact Sheet which are in the possession of [p]laintiffs or their counsel." In turn, PTO 4 required defendant Bayer to produce numerous documents related to the Trasylol litigation.

## C.    November 5, 2010: Plaintiffs Join MDL

On November 5, 2010, the six Plaintiffs—Linda Nelson, Janice Dunham, Stephanie Meiburger, Clyde Mikkola, Oscar Walton, and Pamela Weaver—joined the MDL by filing complaints against Bayer in the district court. However, none of the six Plaintiffs served his or her respective summons and complaint on Bayer as required by Federal Rule of Civil Procedure 4, or as outlined in PTO 4.

## D.    April 1, 2011: Bayer's Notice Regarding Lack of Service

On April 1, 2011, Bayer filed in the district court a "Notice of Cases with Delinquent Plaintiff Fact Sheets and Authorizations," informing the court that a number of plaintiffs had not provided the required Fact Sheets and medical record authorizations within the allowed time frame. Bayer attached a list of the delinquent plaintiffs, which included the six Plaintiffs in this appeal. The list was subdivided into the following two categories: (1) "Cases Where a Bayer Entity Has Been Served," and (2) "Cases Where No Bayer Entity Has Been Served." The first category contained 9 plaintiffs, and the second category contained 84 plaintiffs.

7

Each of the six Plaintiffs in the instant appeal was unambiguously placed into the second category of those 84 plaintiffs who had not yet served process on Bayer.

At the time Bayer filed the April 1, 2011 notice, the 120-day deadline had expired for the six Plaintiffs to effect timely service under Federal Rule of Civil Procedure 4. However, none of the six Plaintiffs was yet barred by a statute of limitations from refiling his or her lawsuit and then timely serving Bayer.[1]

## E.    April 18, 2011: Pretrial Order 31

On April 18, 2011, the district court issued Pretrial Order No. 31 ("PTO 31") for the purpose of providing "a fair and efficient procedure for the enforcement of the requirements applicable to service of process in cases filed in or transferred to this MDL." PTO 31 provided that defendant Bayer could file a list of cases pending in the MDL that were not timely served. Following review of this "Unserved Cases List," the court would issue in each case an "Order to Show Cause" as to why that case should not be dismissed.

Attached as an exhibit to PTO 31 was a model Order to Show Cause. Among other things, the model order expressly allowed a plaintiff who had failed to properly serve Bayer to move for an extension of time in which to effect service. The model order also instructed the delinquent plaintiff on how to properly show

---

[1]Plaintiffs alleged that their respective statutes of limitations were as follows: (1) Nelson—October 22, 2011; (2) Dunham—June 2, 2011; (3) Meiburger—September 28, 2011; (4) Mikkola—March 20, 2012; (5) Walton—September 23, 2013; (6) Weaver—December 16, 2011.

the district court that a statute of limitations would bar the plaintiff from refiling the action upon dismissal.  Specifically, the model order provided:

> If any plaintiff contends that dismissal without prejudice would cause any of plaintiff's claim(s) to be barred in a refiled case by the statute of limitations, <u>such plaintiff shall state the bases for that conclusion, including citations to the applicable statute(s) of limitation, relevant caselaw as appropriate, and a statement of facts supporting the date on which plaintiff contends the claim(s) accrued</u>. If plaintiff fails to demonstrate both:
> 　　　(a) that the claim(s) was/were timely when filed, and
> 　　　(b) that the claim(s) would be untimely in a refiled case,
> the Court will not evaluate limitations issues any further with respect to that plaintiff's claim(s).

On December 5, 2011, pursuant to PTO 31, defendant Bayer filed a list of 34 still-unserved cases that included all of the six Plaintiffs.  Bayer attached a proposed order to show cause that mirrored the aforementioned model order and contained the same language regarding the statute-of-limitations defense.

**F.     February 21, 2012: Plaintiffs' Motion to Extend Time for Service**

On February 21, 2012, Plaintiffs filed a "Motion for Declaration of Waiver of Service of Process," or, alternatively, a "Motion to Extend Time to Serve Process" (hereinafter "Motion for Waiver/Extension").  Plaintiffs' motion was filed nearly 16 months after Plaintiffs filed their lawsuits, and nearly 11 months after Bayer filed its first notice advising that Bayer had not been served by Plaintiffs.

9

In their Motion for Waiver/Extension, Plaintiffs stated that they neither admitted nor denied lack of service, but "through an apparent error, despite Plaintiff's Counsel's practice of using the informal service of process within this MDL under P.T.O. 4 . . ., the Plaintiff's counsel can find no proof of service in this matter."  Plaintiffs' motion then argued that Bayer waived service of process by engaging in discovery and submitting to the district court's jurisdiction without a reservation of rights.

Alternatively, Plaintiffs contended that the district court should grant them an extension of time to serve Bayer because, under Federal Rule of Civil Procedure 4, "good cause" existed for their failure to effect service.  Plaintiffs argued that (1) Bayer was not harmed by any delay in service, (2) Bayer intentionally submitted to the district court's jurisdiction, (3) many similar cases filed on the same day as Plaintiffs' cases resulted in settlement, and (4) Bayer's "conduct and the absence of any detriment to [Bayer] create[d] good cause for an extension of time to serve." Plaintiffs further stated: "Additionally, given that . . . ea[c]h of these cases contains a severe limitations burden, it would be unjust to dismiss this case."

In the factual background section of their February 2012 Motion for Waiver/Extension, Plaintiffs noted: "Under the substantive law of each state, the Plaintiffs['] claims were all timely filed, but at the present moment are also most likely barred by limitations if the cases are dismissed without prejudice and

10

[refiled]."  Moreover, the "limitations under the appropriate state's discovery rule that applies to each case has [run] since the [filing] of this matter."

In response to Plaintiffs' Motion for Waiver/Extension, Bayer argued, inter alia, that Plaintiffs' cases should be dismissed for lack of service, and emphasized that those cases remained unserved more than 16 months after being filed.

## G.    May 8, 2012: District Court's Order

On May 8, 2012, the district court issued an order denying Plaintiffs' Motion for Waiver/Extension.[2]  The court rejected Plaintiffs' arguments regarding waiver and found, inter alia, that Bayer's notice of delinquent cases, filed on April 1, 2011, adequately informed Plaintiffs that their cases remained unserved after the time for service had expired under Rule 4.  As to Plaintiffs' request for an extension of time to serve Bayer, the district court determined that no good cause existed to extend the time for service under Rule 4 because Plaintiffs had not shown that some "outside factor," rather than inadvertence or negligence, prevented service.

The district court recognized that it had discretion to extend time for service even absent good cause.  However, the court reasoned that Plaintiffs provided no argument or basis for finding that Bayer has "wrongfully evaded service or ha[s] concealed a defect relating to service."  Moreover, Plaintiffs did not provide "any

---

[2]The district court's order actually referred to a total of 28 delinquent plaintiffs, which included the six Plaintiffs in the instant appeal.

11

discussion as to whether or not the[ir] actions would be barred if re-filed." The district court stated that Plaintiffs' "blanket assertion" that their cases "most likely" would be barred by statutes of limitations, without more, did not justify granting a discretionary extension. Accordingly, the district court denied Plaintiffs' Motion for Waiver/Extension and directed the Clerk of Court to dismiss their cases (along with 22 other unserved cases) without prejudice.

## H.    May 30, 2012: Plaintiffs' Motion for Reconsideration

On May 30, 2012, Plaintiffs filed a "Motion to Show Relief is Justified Under Rule 4 to Support Those Six Plaintiffs' Motion to Extend Time to Serve Process" (hereinafter "Motion for Reconsideration").[3] This time, Plaintiffs' motion described in detail when each Plaintiff's cause of action accrued and when each Plaintiff's statute of limitations expired. According to Plaintiffs' calculations, all but one of the six Plaintiffs would be barred from refiling their complaints upon dismissal.[4] Plaintiffs' motion argued that an extension of time for service would be justified because their states' respective statutes of limitations would bar their claims upon refiling.

---

[3]Plaintiffs do not dispute on appeal that this motion, despite its title, was actually a motion for reconsideration of the district court's May 8, 2012 order.

[4]The motion stated that Plaintiff Oscar Walton's cause of action accrued in North Carolina, and does not expire until September 23, 2013. Walton joined the motion so that, in the event the district court granted an extension of time to serve process, Walton would not have to refile his case.

12

Plaintiffs additionally submitted "new evidence" that they argued showed good cause for their failure to serve process. This "new evidence" was the fact that 9 of the 28 plaintiffs whose cases were dismissed without prejudice for failure to effect service had settled with Bayer in March 2011 for a total sum of nearly $1.8 million, and these settlements showed that the instant six Plaintiffs acted reasonably and in good faith in not serving Bayer.

In response to Plaintiffs' Motion for Reconsideration, Bayer argued that Plaintiffs had merely repeated their previous arguments, and the purportedly new evidence of settlement was actually available to Plaintiffs months before the district court's May 9, 2012 dismissal order.

On July 9, 2012, the district court denied Plaintiffs' Motion for Reconsideration. Plaintiffs timely appealed both the district court's original May 9 order dismissing their claims and its July 9 order denying reconsideration.[5]

## II.     STANDARDS OF REVIEW

We review for abuse of discretion a district court's "dismissal without prejudice of a plaintiff's complaint for failure to timely serve a defendant under Rule 4(m)." Lepone-Dempsey, 476 F.3d at 1280. We also review for abuse of

---

[5]Two days before filing their notice of appeal on August 6, 2012, Plaintiffs filed a Federal Rule of Civil Procedure 59(e) motion to alter or amend judgment. The district court has not ruled on this motion to date.

13

discretion a court's decision to grant or deny an extension of time under Rule 4(m).

See id.[6]

### III.    DISCUSSION

### A.    Good Cause

Plaintiffs did not serve Bayer for nearly 16 months before filing their Motion

for Waiver/Extension.  The first dispute is over whether Plaintiffs showed good

cause for their failure to serve Bayer within 120 days.  See Fed. R. Civ. P. 4(m).

The district court reasoned that Plaintiffs had not shown that some "outside

factor," rather than mere inadvertence or negligence, prevented them from serving

process on Bayer, and thus, no good cause was shown.  See Lepone-Dempsey, 476

F.3d at 1281-82.  We note that in Plaintiffs' February 2012 Motion for

Waiver/Extension, Plaintiffs' counsel suggested that the failure to serve resulted

from an "apparent error," given that counsel served many other plaintiffs' cases

using the simplified service process under PTO 4.

In addition, Bayer's April 1, 2011 notice of delinquent cases unambiguously

indicated that all six Plaintiffs had not yet effected service.  There is no indication

that, after receiving this notice, Plaintiffs immediately attempted to serve Bayer, or

at least move for an extension of time to serve Bayer, even though none of the six

---

[6]Plaintiffs do not challenge on appeal the district court's decision that Bayer did not waive service of process by submitting to the district court's jurisdiction or engaging in discovery in the MDL.  Accordingly, we will not address this waiver issue.

Plaintiffs' statutes of limitations had expired at that point.  Plaintiffs only moved

for an extension of time nearly 11 months later, when threatened with dismissal.

Thus, we cannot say that the district court abused its discretion in concluding that

Plaintiffs failed to establish "good cause" under Rule 4.

Because Plaintiffs failed to show good cause under Rule 4(m), the district

court was not required to grant them an extension of time to effect service.  See

Lepone-Dempsey, 476 F.3d at 1281.  This does not end the analysis, however, as

explained below.

**B.      Factors Warranting Relief in the Absence of Good Cause**

If a plaintiff fails to show good cause for failure to serve the defendant, "the

district court must still consider whether any other circumstances warrant an

extension of time based on the facts of the case." Lepone-Dempsey, 476 F.3d at

1282.  For example, the district court may grant an extension "if the applicable

statute of limitations would bar the refiled action, or if the defendant is evading

service or conceals a defect in attempted service." Horenkamp v. Van Winkle and

Co., Inc., 402 F.3d 1129, 1132-33 (11th Cir. 2005) (quoting Fed. R. Civ. P. 4(m)

advisory committee's note (1993 amendments)).  After considering whether any

such factors exist, the district court may "exercise its discretion and either dismiss

the case without prejudice or direct that service be effected within a specified

time." Lepone-Dempsey, 476 F.3d at 1282.  Notably, though, "the running of the

15

statute of limitations does not require that a district court extend the time for service of process" under Rule 4(m).  Horenkamp, 402 F.3d at 1133; see also Panaras v. Liquid Carbonic Indus. Corp., 94 F.3d 338, 341 (7th Cir. 1996) ("[A]bsent a finding of good cause, a district court may in its discretion still dismiss a case even after considering that the statute of limitations has run.").

1.    Statutes of Limitations

On appeal, Plaintiffs argue that the district court should have granted their February 2012 Motion for Waiver/Extension of time to serve process because their cases would be barred by statutes of limitations upon refiling.  However, in its order denying that motion, the district court pointed out that Plaintiffs had not provided "any discussion" as to whether their civil actions would be barred if refiled, and that their "blanket assertion" regarding the time-bar did not justify granting a discretionary extension.  Indeed, in their Motion for Waiver/Extension, Plaintiffs merely asserted in a conclusory fashion that their cases "most likely" would be barred upon refiling.  They also referred to a "severe limitations burden," but did not provide any substantive discussion of the issue, much less what particular state statutes of limitations applied, or even how long the applicable statutes of limitations were and when they began to run.  Thus, we agree with the district court that Plaintiffs' cursory mention of a possible time-bar was not enough to require an extension, especially given that Plaintiffs were warned beforehand

16

(both in the April 18, 2011 model Order to Show Cause attached to PTO 31, and in the similar proposed show-cause order attached to Bayer's December 5, 2011 list of unserved cases) what information was needed to properly raise a statute-of-limitations argument.

We recognize that Plaintiffs greatly expanded on their statute-of-limitations argument in their May 30, 2012 Motion for Reconsideration. However, a motion for reconsideration of the court's May 8, 2012 dismissal order "cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 957 (11th Cir. 2009) (internal quotation marks omitted).[7] Plaintiffs could have properly presented their statute-of-limitations argument in their initial February 2012 Motion for Waiver/Extension. Thus, Plaintiffs have not shown the district court abused its discretion in denying Plaintiffs' motion for reconsideration. See id.

2.    Other Factors

Plaintiffs argue that the district court should have granted them an extension because Bayer settled nine other cases in which the plaintiffs failed to properly serve process. However, the fact that Bayer voluntarily chose to settle some cases despite lack of service does not mean that lack of service must be excused in other

---

[7]We review a denial of a motion for reconsideration for abuse of discretion. Wilchombe, 555 F.3d at 957.

cases.  Whether to settle a case is entirely within Bayer's discretion.  Nothing suggests, and Plaintiffs do not argue, that Bayer somehow waived its right to contest Plaintiffs' lack of service by settling the cases of other plaintiffs.

Plaintiffs also argue that they submitted the required Fact Sheets to Bayer at "great cost."  We recognize Plaintiffs produced their Fact Sheets and a large volume of medical records.  But they had to do so to comply with the district court's orders in the MDL action, such as PTO 4.[8]

In light of the foregoing, Plaintiffs here have not demonstrated that the district court abused its discretion in dismissing Plaintiffs' cases for lack of service and denying Plaintiffs' Motion for Reconsideration.  Accordingly, we affirm.[9]

**AFFIRMED.**

---

[8]Plaintiffs assert that they produced over 9,000 pages of protected medical records to Bayer with the expectation that their cases would not be dismissed on a "procedural technicality."  In support, Plaintiffs cite to a record-request letter showing that Plaintiffs attempted to procure over 9,000 pages of their protected medical records on July 27, 2012, after the district court denied their May 30, 2012 Motion for Reconsideration on July 9, 2012.  It is not clear why Plaintiffs continued to produce discovery after their actions had been dismissed, but the district court certainly could not have granted them an extension to serve process based on evidence not yet in existence at the time of the court's May 8, 2012 dismissal order.

[9]Nothing in this opinion should be construed as passing on the merits of the underlying MDL action against Bayer.